UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM A. SNYDER,

                            Plaintiff,

        v.

SUPERINTENDENT M. McGINNIS, CAPTAIN
W. WILCOX, DEPUTY SUPERINTENDENT
T.H.  GILTNEA, LT. DONAHUE, DEPUTY
SUPERINTENDENT WEINGARTNER,
LT. HAZELTEN, LT. STRONG, SGT. CUTLER,
SGT. HETRICK, SGT. INMAN, SGT. LITWILER,
SGT. MANOS, SGT. SEPIO, SGT. OSBORN,
SGT. JOHN DOE 1, C.O. BRISTOL, C.O. COLLINS,
C.O. KAMAS, C.O. SHELLY, I.G.R.C. REP. W.
CIANCIO, PSYCHOLOGIST B. VERTOSKE, and
RN DYAL,

                         Defendants.
_____

**DECISION**
**and**
**ORDER**

**03-CV-902F**
**(consent)**

APPEARANCES:      WILLIAM A. SNYDER, *Pro Se*
                       93-B-2024
                       Great Meadow Correctional Facility
                       Box 51
                       Comstock, New York 12821

                       ANDREW M. CUOMO
                       Attorney General, State of New York
                       Attorney for Defendants
                       DARREN LONGO
                       Assistant Attorney General, of Counsel
                       107 Delaware Avenue
                       4th Floor
                       Buffalo, New York 14202

## <u>JURISDICTION</u>

On March 10, 2005, the parties to this action consented to proceed before the

undersigned.  The matter is presently before the court on Defendants' motion for partial

summary judgment (Doc. No. 33), filed November 30, 2005.

## BACKGROUND

On December 1, 2003, Plaintiff William A. Snyder ("Plaintiff" or "Snyder"), an inmate formerly housed at Southport Correctional Facility ("Southport" or "the correctional facility"), commenced this civil action *pro se*, pursuant to 42 U.S.C. § 1983, alleging numerous violations of his Eighth Amendment rights civil rights by numerous Defendants, all Southport employees, including both supervisory and non-supervisory personnel, based on a failure to protect Plaintiff from another inmate, denial of medical care, and retaliation. By order filed March 18, 2004 (Doc. No. 4), all claims against several Defendants named in the original complaint, including T. H. Giltnea, Deputy Superintendent Weingartner, Sgt. Hetrick, Sgt. Inman, Sgt. Litwiler, Sgt. Manos, Sgt. Sepio, Sgt. John Doe 1, and RN Dyal were dismissed and such Defendants were terminated as parties to this action. An Amended Complaint was filed on April 12, 2004, against Defendants Superintendent M. McGinnis ("McGinnis"), Captain W. Wilcox ("Wilcox"), Lt. Donahue ("Donahue"), Lt. Hazelten ("Hazelten"), Lt. Strong ("Strong"), Sgt. Cutler ("Cutler"), Sgt. Osborn ("Osborn"), C.O. Bristol ("Bristol"), C.O. Collins ("Collins"), C.O. Kamas ("Kamas"), C.O. Shelly ("Shelly"), I.G.R.C. Rep. W. Ciancio ("Ciancio"), and Psychologist B. Vertoske ("Vertoske"). By Decision and Order filed September 2, 2004 (Doc. No. 6), all claims were dismissed as against Defendants Strong, Vertoske, Wilcox, Donahue, and Hazelton. The claims remaining in this action allege:

(1)     on January 10, 2002, Defendant Osborne, at the behest of Defendant

McGinnis, issued a misbehavior report to retaliate against Plaintiff for

exercising his constitution right to file an inmate grievance ("Claim 1");

(2)     on April 1, 2002, Defendant Collins issued a misbehavior report to

retaliation against Plaintiff for filing an inmate grievance ("Claim 2");

(3)     Defendants McGinnis and Ciancio failed to protect Plaintiff from being cut

by another inmate, Lawrence, on January 4, 2002 ("Claim 3");

(4)     Defendants Collins and Bristol used excessive force against Plaintiff on

February 22, 2002 ("Claim 4");

(5)     Defendants Collins and Bristol used excessive force against Plaintiff on

April 1, 2002 ("Claim 5");

(6)     deliberate indifference by Defendants Cutler, Collins, and Kamas with

regard to Plaintiff's serious medical needs by ignoring Plaintiff's request

for medical attention after the February 22, 2002 excessive force incident

("Claim 6");

(7)     retaliation by Defendants McGinnis and Osborne who filed a false

misbehavior report against Plaintiff on January 4, 2002 ("Claim 7");

(8)     retaliation by Defendants McGinnis and Ciancio by failing to protect

Plaintiff from inmate Lawrence on January 4, 2002 ("Claim 8");

(9)     use of excessive force by Defendants Collins and Shelly on February 22,

2002, and by Defendants Collins and Bristol on April 1, 2002, to retaliate

against Plaintiff ("Claim 9"); and

(10)    denial of medical care on February 22, 2002, by Defendants Cutler and

3

Collins to retaliate against Plaintiff ("Claim 10").[1]

On November 30, 20005, Defendants filed a motion seeking partial summary judgment as to above Claims 1, 3, 6, 7, 8, and 10 (Doc. No. 33) ("Defendants' Motion"), which, essentially, allege Defendants retaliated against Plaintiff for filing inmate grievances against Defendants by issuing false misbehavior reports against Plaintiff, failing to protect Plaintiff from other inmates, and acting with deliberate indifference to Plaintiff's various asserted serious medical needs.[2] Also filed on November 30, 2005 in support of Defendants' motion are a Memorandum of Law (Doc. No. 34) ("Defendants' Memorandum"), a Statement of Facts Not in Dispute (Doc. No. 35) ("Defendants' Statement of Facts"), the Declaration of Assistant Attorney General Stephen Gawlik ("Gawlik") (Doc. No. 36) ("Gawlik Declaration"), attached to which as Exhibit A are portions of Plaintiff's deposition testimony ("Plaintiff's Dep. Tr. at __"), the Declaration of Michael McGinnis ("McGinnis") (Doc. No. 37) ("McGinnis Declaration") with attached exhibits A and B ("McGinnis Declaration Exh(s). __"), and the Declaration of John Osborne ("Osborne") (Doc. No. 38) ("Osborne Declaration") with attached exhibits A through D ("Osborne Declaration Exh(s). __").

In light of Plaintiff's *pro se* status, on December 2, 2005, a notice to Plaintiff pursuant to Local Rule of Civil Procedures 56.2 and *Irby v. New York City Transit Authority*, 262 F.3d 412, 413 (2d Cir. 2001) (Doc. No. 39) ("IRBY notice"), was mailed to

---

[1] The Amended Complaint contains four separately enumerated Claims for Relief. Within each claim, however, are numerous claims for relief with overlapping and repeated allegations of events and injuries. In the interest of clarity, the court has separated and renumbered the individual claims so as to present the claims in chronological order, and only as against those Defendants who remain in the case.

[2] Defendants do not seek summary judgment as to Plaintiff's claims alleging excessive force and retaliation based on excessive force, specifically, Claims 2, 4, 5 and 9.

Plaintiff, and was not returned as undeliverable.  The IRBY notice advised Plaintiff that

Defendants had moved for the court to decide some of Plaintiff's claims against

Plaintiff, without a trial and based only on written materials submitted in support of the

motion.  The IRBY notice further advised Plaintiff that to avoid summary judgment being

granted in Defendants' favor, it was necessary to file papers, including sworn affidavits,

establishing the existence of a material issue of fact, and that any material issue of

undisputed fact set forth in Defendants' Statement of Facts would be deemed admitted

if not controverted by Plaintiff.

A December 2, 2005 Order (Doc. No. 40) established January 31, 2006 as

Plaintiff's deadline for filing a response opposing Defendants' motion, and February 17,

2006 as Defendants' deadline for filing any reply in further support of the motion.  To

date, Plaintiff has not filed anything opposing Defendants' motion.  Oral argument was

deemed unnecessary.

Based on the following, Defendants' motion is GRANTED.


**FACTS**[3]

At all times relevant to this action, Plaintiff William A. Snyder ("Plaintiff") was

incarcerated at Southport Correctional Facility ("Southport" or "the correctional facility").

On December 25 and 27, 2001, respectively, Plaintiff allegedly filed complaints with

Defendant McGinnis and Cianco[4] regarding threats another inmate, "Lawrence," had

---

[3] Taken from the pleadings and motion papers filed in this action.  Only the facts relevant to Plaintiff's claims for which Defendant seeks summary judgment are presented.

[4] To date, Cianco has neither been served nor appeared in this action.

made against Plaintiff, although McGinnis denies having any record of ever receiving

from Plaintiff any complaint regarding threats to Plaintiff's safety made by Lawrence

prior to January 5, 2002.

On January 4, 2002, at 9:45 A.M., Plaintiff reported to prison staff that while going

to the facility's shower, Plaintiff had been cut on the neck by an inmate named

"Lawrence."   At that time, Defendant Osborne, who was assigned to supervise the area

of Southport in which Plaintiff resided and the incident occurred, spoke with Plaintiff and

noticed a cut on the right side of Plaintiff's neck.   Upon speaking with other correctional

officers on duty in the area, Osborne was advised that none had witnesses any

altercation between Plaintiff and Lawrence.   Osborne then interviewed Lawrence who

also denied having cut Plaintiff.   Both Plaintiff and Lawrence were searched and their

cells frisked, but no contraband consistent with Plaintiff's claimed assault by Lawrence

was found.

At Osborne's request, Plaintiff was examined by Nurse Brink who reported

Plaintiff had sustained a cut on his neck measuring 2 inches long and 1 centimeter

deep.   Nurse Brink cleaned and sterilized the cut and determined no follow-up care was

needed.

Based on the absence of any witnesses or evidence supporting Plaintiff's

assertion that he had been cut by Lawrence, on January 10, 2002, Osborne issued an

inmate misbehavior report charging Plaintiff with self-mutilation by inflicting bodily harm

on himself on January 4, 2002.

In contrast, Plaintiff alleges that Osborne issued the inmate misbehavior report at

the behest of Defendant McGinnis to retaliate against Plaintiff for filing a grievance on

January 5, 2002, alleging that despite filing complaints with McGinnis and Cianco on December 25 and 27, 2001, Defendant McGinnis and Cianco failed to protect Plaintiff from being assaulted by Lawrence on January 4, 2002.

According to Plaintiff, on February 22, 2002, Defendant Cutler allowed Defendants Collins and Shelley to use excessive force against Plaintiff to retaliate against Plaintiff's filing of prison inmate complaints against various prison authorities. Plaintiff further maintains that following the assault, he was denied medical attention by Defendants Collins, Cutler and Kamas for the resulting injuries Plaintiff sustained, and that such denial was intended to retaliate against Plaintiff for filing unspecified prison inmate grievances.

On April 1, 2002, Defendants Collins and Bristol used force against Plaintiff, allegedly to retaliate against Plaintiff for filing prison inmate complaints against various prison authorities. According to Plaintiff, following the assault, Collins filed a false inmate misbehavior report against Plaintiff to cover up the assault perpetrated by Collins on Bristol earlier that same day.

## DISCUSSION

**1.     Summary Judgment**

Defendants seek summary judgment on Plaintiff's claims that Defendants subjected retaliated against Plaintiff for filing inmate grievances against Defendants by issuing false misbehavior reports against Plaintiff, failing to protect Plaintiff from an assault by inmate Lawrence who had previously threatened Plaintiff's safety, and by acting with deliberate indifference to Plaintiff's serious medical needs, specifically,

failing to treat injuries Plaintiff sustained when Defendants used excessive force against Plaintiff.[5]  Plaintiff has not responded in opposition to summary judgmnent

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as

---

[5] Defendants do not, however, seek summary judgment on Plaintiff's retaliation claims insofar as such claims are based on excessive force.

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Furthermore, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996).  As stated, in the instant case Plaintiff has not filed anything opposing Defendants' motion.  Plaintiff thus has failed to challenged the accuracy of any evidence on which Defendants rely in support of summary judgment. Furthermore, by failing to file a responding statement of disputed material facts pursuant to this court's Local Rule 56.1, Plaintiff is deemed to have admitted the veracity of the statements contained in Defendants' Statement of Facts.  Local Rule 56.1(c) ("All material facts set forth in the statement [of undisputed facts] required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.") (bracketed text added).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  Here, Plaintiff's claims that Defendants' failed to

protect him from an assault and that Defendants were deliberate indifferent to Plaintiff's serious medical needs allege violations of the Eighth Amendment's protection against cruel and unusual punishment, while Plaintiffs' retaliation claims allege violations of Plaintiff's First Amendment right to free speech and to petition for redress of grievances.  As discussed below, Plaintiff's claims are without merit.


2.      **Failure to Protect**

Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect Plaintiff from being attacked by inmate Lawrence, despite Plaintiff's filing of complaints on December 25 and 27, 2001, alerting McGinnis and Cianco that Lawrence was threatening Plaintiff's safety. Defendant argues in support of summary judgment that the undisputed facts in the record fail to support Plaintiff's claim.  Defendants' Memorandum at 5-7.

It is fundamental that the Eighth Amendment protects prisoners from "cruel and unusual punishment."  U.S. CONST. 8th Amend.  Prisoners' rights under the Eighth Amendment have been construed as including freedom from the "unnecessary and wanton infliction of pain" at the hands of prison officials, *Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), as well as protection from violence sought to be inflicted by other inmates.  *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991).  An Eighth Amendment claim is comprised of both an objective and subjective element.  *Romano*, 998 F.2d at 105 (citing *Hudson v. McMillan*, 503 U.S. 1, 8 (1992), and *Wilson v. Seiter*, 501 U.S. 294, 298, (1991)).

"The objective component of the alleged violation relates to the 'seriousness of

the injury.'" *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996) (quoting *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)).  Specifically, the plaintiff is required to establish that the alleged deprivation is "sufficiently serious" or "harmful enough" to reach constitutional dimensions.  *Hudson*, 503 U.S. at 8; *Romano*, 998 F.2d at 1005 (citing *Wilson*, 501 U.S. at 298).  Whether the alleged harm is sufficient for purposes of the Cruel and Unusual Punishment Clause depends on the specific claim at issue. *Hudson*, 503 U.S. at 8.  In particular, the objective element must "be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged," and also "draws its meaning from the evolving standards of decency that mark the progress of a maturing society."  *Hudson*, 503 U.S. at 8 (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986), and *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal quotation omitted)).  "The objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 9 (quoting *Estelle*, 429 U.S. at 103).  To prevail on an Eighth Amendment claim based on failure to prevent harm, an inmate must demonstrate that he "is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993)).

Under the subjective component, the inmate must demonstrate "the unnecessary and wanton infliction of pain," *Farmer*, 511 U.S. at 834, which turns on the defendant's state of mind.  *Romano*, 998 F.2d at 105 (citing *Wilson*, 501 U.S. at 298).  "Specifically, the jury must be persuaded that the defendant acted wantonly" and "wantonness does not have a fixed meaning but must be determined with due regard for differences in the

kind of conduct against which an Eighth Amendment objection is lodged." *Id.* (internal quotations omitted).  The wantonness that must be demonstrated to establish an Eighth Amendment violation based on a failure to protect an inmate from violence by other inmates is "one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834; *Hendricks*, 942 F.2d at 113.

The test for "deliberate indifference" is twofold, requiring the plaintiff to demonstrate both that he "is incarcerated under conditions posing a substantial risk of serious harm," and that "the defendant officials possessed sufficient culpable intent." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996). Further, culpable intent requires the inmate to establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id*. at 620 (citing *Farmer*, 511 U.S. at 834-35).  In the instant case, Plaintiff has failed to point to any evidence establishing the existence of either of these two prongs.

As to the requirement that Plaintiff be "incarcerated under conditions posing a substantial risk of serious harm," *Hayes*, 84 F.3d at 620, assuming, *arguendo*, that Lawrence did attack Plaintiff on January 4, 2002, the record establishes that Plaintiff admitted the cut he sustained during the attack was "small" and "superficial," required only cleaning and bandaging, and which did not leave any visible scar.  Plaintiff's Dep. Tr. at 17-18.  That Lawrence did not inflict greater harm upon Plaintiff, however, does not necessarily imply that Lawrence's intent was to inflict only a superficial wound; indeed, it may have been Plaintiff's own defensive actions that limited the severity of the wound.  Nevertheless, even if Plaintiff were subjected to a serious risk of substantial

harm by Lawrence, the record does not establish that Defendants were both aware of and deliberately indifferent to such risk.

Despite Plaintiff's assertion that on December 25, 2001, he filed a complaint with McGinnis,[6] McGinnis states in an affidavit submitted in support of summary judgment that although as Superintendent of Southport, he receives hundreds of letters each year from inmates housed at Southport, and any such letter expressing a concern about a threat from another inmate is referred to McGinnis' subordinates for review, investigation and response.  McGinnis Declaration ¶¶ 1-4.  According to McGinnis, a review of Plaintiff's file maintained at Southport revealed no record that Plaintiff ever notified McGinnis of any threat by other inmates prior to January 4, 2002, nor did anything else in Plaintiff's filed indicate McGinnis was ever advised that Plaintiff was in any danger from another Southport inmate.  *Id.* ¶¶ 5, 8.

In contrast, McGinnis admitted receiving Plaintiff's January 5, 2002 complaint regarding being attacked by Lawrence the previous day, January 4, 2002.  *Id.* ¶ 6.  A date stamp on Plaintiff's January 5, 2002 complaint indicates it was received in Southport's Superintendent's office on January 7, 2002. McGinnis Declaration Exh. A. Upon receiving the complaint, McGinnis referred the matter to Captain J. Bellnier ("Bellnier"), who moved Plaintiff to another cell as a precautionary measure while the matter was investigated.  McGinnis Declaration ¶ 7; Bellnier Memorandum dated January 15, 2002, McGinnis Declaration Exh. B.

As stated, Plaintiff has not submitted anything in opposition to summary

---

[6] Although Plaintiff also asserts his failure to protect claim against Cianco based on an alleged complaint made to Cianco on December 27, 2001, to date, Cianco has neither been served nor appeared in this action and, as such, the court does not further address the failure to protect claim against Cianco.

judgment.  Plaintiff also testified at his deposition that the December 25, 2001

complaint was the only complaint Plaintiff made to McGinnis prior to January 4, 2002,

and that Plaintiff was not sure that McGinnis ever actually received the December 5,

2001 complaint.  Plaintiff's Dep. Tr. at 8-9.  As such, nothing in the record creates an

issue of fact which, if decided in Plaintiff's favor, could support a reasonable jury's

determination that McGinnis was aware of, yet deliberately ignored, a substantial risk of

serious harm to Plaintiff.

There is evidence in the record that on December 27, 2001, Plaintiff did send

another letter to Cianco, Southport's Inmate Grievance Resolution Committee

representative, complaining of threats by Lawrence to Plaintiff's safety, and that the

complaint was investigated by the IGRC.  *See* Plaintiff's Dep. Tr. at 10-13 (discussing

how upon submitting the December 27, 2001 complaint to Cianco regarding threats

made by Lawrence to Plaintiff's safety, such complaint was investigated).  That fact,

however, is insufficient to hold McGinnis, as Southport's superintendent, responsible for

failing to protect Plaintiff from Lawrence based on *respondeat superior*.  *Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Johnson v. Glick*, 481 F.2d 1028, 1034

(2d Cir.) ("The rule in this circuit is that when monetary damages are sought under §

1983, the general doctrine of *respondeat superior* does not suffice and a showing of

some personal responsibility of the defendant is required.").

Summary judgment on this claim is GRANTED in favor of Defendants.


3.     **Denial of Medical Care**

Plaintiff claims Defendants Cutler, Collins and Kamas acted with deliberate

indifference to Plaintiff's serious medical needs by ignoring Plaintiff's request for medical attention following an incident on February 22, 2002, in which Defendants Collins and Shelley allegedly used excessive force against Plaintiff.

An Eighth Amendment claim of denial of medical care requires the "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" on the part of the Defendants. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The test for "deliberate indifference" requires a § 1983 plaintiff demonstrate both that (1) he "is incarcerated under conditions posing a substantial risk of serious harm," and (2) "the defendant officials possessed sufficient culpable intent." *Hayes*, 84 F.3d at 620. Further, culpable intent requires the inmate to establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id*. (citing *Farmer*, 511 U.S. at 834-35). However, an Eighth Amendment claim for denial of medical care does not require that the plaintiff actually experience serious physical injury as a result of that denial. *See Harrison v. Barkley*, 219 F.3d 132, (2d Cir. 2000) (holding defendants' alleged refusal to treat inmate's tooth cavity would constitute deliberate indifference to serious medical need under Eighth Amendment, even though inmate did not ultimately suffer serious physical harm, provided defendants knew of and disregarded risk to inmate's serious medical needs).

In the instant case, the only evidence of any injury Plaintiff sustained on

February 22, 2002, is Plaintiff's testimony at his deposition describing scratches, a swollen eye and bruises.  Plaintiff's Dep. Tr. at 35-36.  Although not submitted in connection with Defendant's motion, during his deposition Plaintiff was presented with the portion of his medical report relative to the February 22, 2002, incident, the authenticity and accuracy of which Plaintiff did not challenge.  *Id*. at 32-36.  As discussed during Plaintiff's deposition, the medical report indicated that following the February 22, 2002 use of force incident, occurring at 11:00 A.M., Plaintiff complained of a swollen eye and problems with his vision, but he received no medical attention until 1:15 P.M. that same day when R.N. Dyal gave Plaintiff pain medication for his back, and reported Plaintiff had sustained a one inch bruise on his right forehead for which Dyal provided a betadine patch.  *Id*. at 32-33, 35.  Plaintiff stated he had some scratches, but denied bleeding.  *Id*. at 35-36.  According to Plaintiff, his eye was swollen "completely shut" and he had "bruises all over his body" for which he should have been provided with ice.  *Id*. at 36.  Plaintiff's assertions, even if true, do not arise to an Eighth Amendment violation.

First, the record is devoid of any evidence establishing that Plaintiff's injuries sustained on February 22, 2002 constituted a serious medical condition for which the denial of adequate treatment "could result in further significant injury or the unnecessary and wanton infliction of pain."  *Chance*, 143 F.3d at  702.  In fact, Plaintiff does not even allege, either in the Complaint or in his deposition testimony, that he did suffer any further significant injury or pain based on any delayed or denied treatment.  Significantly, Plaintiff does not allege that as a result of the inadequate treatment, his injuries did not heal, or that their healing was delayed.  Because Plaintiff cannot

establish that any denial of medical care caused him to be "incarcerated under conditions posing a substantial risk of serious harm," the court need not consider whether "the defendant officials possessed sufficient culpable intent" with regard to such incarceration.  *Hayes*, 84 F.3d at 620.

On this record, summary judgment should be GRANTED in Defendants' favor.


**4.      Retaliation**

Plaintiff alleges that Defendants retaliated against him for filing complaints by filing false misbehavior reports against Plaintiff, failing to protect Plaintiff from being attacked by Lawrence on January 4, 2002, and by denying Plaintiff medical care following the incidents of January 4 and February 22, 2002.  There is no merit to these claims.

Prisoner retaliation claims are properly viewed "with skepticism and particular case," because "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  Further, conclusory allegations or denials are insufficient to avoid dismissal of a retaliation claim.  *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

"[T]o state an actionable claim for retaliation, [Plaintiff] 'must advance non-conclusory allegations establishing (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that

there was a causal connection between the protected speech and the adverse action.'"
*Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (quoting *Dawes*, *supra*, at 492).

In the instant case, as the filing of prison grievances is a constitutionally protected activity, Plaintiff satisfies the first element of the test. *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) (citing *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996), and *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)).  Plaintiff also satisfies the third element requiring causation between the alleged adverse action and an actual constitutional injury given the "temporal proximity" between Plaintiff's filing of grievances and the alleged retaliatory actions.  *Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003) (citing cases).  *See also Morales*, 278 F.3d at 121 (holding 22 day time frame between plaintiff inmate's filing of prison grievance and plaintiff's transfer to psychiatric facility sufficiently short to support inference of defendants' retaliatory motive).  Nevertheless, the record fails to establish the second element, requiring a legally sufficient adverse action based on either the alleged filing of false misbehavior reports, failure to protect or denial of medical care.

"To adequately plead an adverse action, a plaintiff must allege that defendants subjected him to 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Morales*, 278 F.3d at 121 (quoting *Dawes*, 239 F.3d at 493 ("Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation . . . .  Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection.")).  Stated another way, the alleged adverse action must be action "that would deter a

18

prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts." *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).

First, the record fails to support Plaintiff's allegation that Defendant Osborne filed a false misbehavior report at the direction of McGinnis to retaliate against Plaintiff's filing of the January 5, 2002 complaint claiming McGinnis failed to protect Plaintiff from being attacked by Lawrence on January 4, 2002.[7]  Specifically, both McGinnis and Osborne deny that McGinnis directed Osborne to issue the January 10, 2002 Inmate Misbehavior Report, or even having any conversations with each other regarding the January 4, 2002 incident before the Inmate Misbehavior Report was issued.  McGinnis Declaration ¶ 9; Osborne Declaration ¶ 10.  Plaintiff not only does not challenge the accuracy of such statements, but admitted at his deposition that he had no knowledge that McGinnis and Osborne ever spoke about the January 4, 2002 incident.  Plaintiff's Dep. Tr. at 16.  In fact, when asked as his deposition the basis for believing that Osborne issued the January 10, 2002 Inmate Misbehavior Report at the direction of McGinnis, Plaintiff attributed such belief to speculation based on the assumption that Plaintiff had made a complaint to McGinnis before the January 10, 2002 Inmate Misbehavior Report was written.  Plaintiff's Dep. Tr. at 16.  Furthermore, absent some evidence of personal involvement, McGinnis cannot be liable for the issuance of a false inmate misbehavior report based solely on a theory of respondeat superior.  *Wright*, 21 F.3d at 501.

---

[7] An inmate's § 1983 action challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), such that the inmate need not first establish that the inmate disciplinary proceedings were terminated in the inmate's favor.  *Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999).

Accordingly, the record fails to establish any material issue of fact suggesting that Defendant Osborne wrote the January 10, 2002 Inmate Misbehavior Report at McGinnis's direction to retaliate against Plaintiff for filing the January 5, 2002 Inmate Grievance charging McGinnis with failing to protect Plaintiff from being attacked on January 4, 2002 by Lawrence.  Summary judgment is GRANTED in favor of Defendants as to this claim.

Insofar as Plaintiff alleges Defendant McGinnis failed to protect Plaintiff from being attacked by Lawrence on January 4, 2002, to retaliate against Plaintiff for filing the December 25, 2001 complaint that Lawrence had threatened Plaintiff, as discussed, Discussion, *supra*, at 12-14, the record fails to establish that such complaint was ever filed.  There is thus no basis for supporting a finding that McGinnis retaliated against Plaintiff for filing the asserted compliant by failing to protect Plaintiff from Lawrence on January 4, 2002, and summary judgment as to this aspect of the claim is GRANTED in favor of Defendants.

Finally, insofar as Plaintiff alleges Defendants Culter, Collins and Kamas denied Plaintiff necessary medical care on January 4, and February 22, 2002, to retaliate against Plaintiff's filing of inmate grievances, as discussed above, the record fails to establish that such Defendants denied Plaintiff any necessary medical care. Discussion, *supra*, at 15-17.   There is, therefore, no basis on which a reasonable jury could conclude that Defendants denied Plaintiff necessary medical care to retaliate against Plaintiff for filing inmate grievances and Defendants are GRANTED summary judgment as to this claim.

## **CONCLUSION**

Based on the foregoing, Defendants' motion for partial summary judgment (Doc.

No. 33) is GRANTED.  The parties are directed to contact chambers to schedule further

proceedings.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 2, 2007
            Buffalo, New York